IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RANDI L. ORGAN, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>FRANK BISIGNANO,¹ )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>   Defendant. ) | Case No. CIV-24-420-GLJ |

RANDI L. ORGAN,

   Plaintiff,

v.           Case No. CIV-24-420-GLJ

FRANK BISIGNANO,[1]
Commissioner of the Social
Security Administration,

   Defendant.

## OPINION AND ORDER

Claimant Randi L. Organ requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Martin O'Malley as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

(10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was twenty-four years old at the time of the administrative hearing.  (Tr. 35, 193).  She completed her GED in 2016 and has no past relevant work.  (Tr. 28, 221).  Claimant alleges he has been unable to work since her application date of June 14, 2021, due to severe anxiety, mild depression, heart issues, hyper-mobility, and "other previous issues."  (Tr. 220).

## Procedural History

On June 14, 2021, Claimant filed an application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her application was denied.  ALJ Christopher Hunt held an administrative hearing and determined that Claimant was not disabled in a written decision dated May 21, 2024 (Tr. 17-30).  The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  At step two, the ALJ found that Claimant had the severe impairments of mitral valve prolapse and Ehlers Danlos Syndrome, as well as the nonsevere impairments of depression and anxiety (Tr. 19).  Next, he found that Claimant's impairments did not meet a listing.  (Tr. 21-22).

At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), *i.e.*, she can lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, sit and stand/walk for six hours in an eight-hour workday, but only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could not climb ladders/ropes/scaffolds or be exposed to unprotected heights. Finaly, he limited her to no reaching or working overhead with the left upper extremity, but found she had no limitations in reaching all other directions. (Tr. 22). The ALJ then determined that although Claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform in the economy, *e.g.*, merchandise marker, photocopy machine operator, and screwdriver operator. (Tr. 29).

## Review

Claimant contends the ALJ erred in assessing her RFC by failing to provide an appropriate narrative statement and failing to account for her nonsevere impairments, and further failed to properly identify jobs she could perform at step five. The Court disagrees, and the decision of the Commissioner should therefore be affirmed.

The relevant medical evidence reflects that, prior to the application date, Claimant underwent a mental health assessment and received a diagnosis of generalized anxiety disorder on May 22, 2019. (Tr. 293-295). A September 2019 record from MindSpa in Tulsa, Oklahoma, reflects a diagnosis of major depressive disorder, moderate and recurrent. (Tr. 301). In October 2019, treatment records reflect Claimant was assessed with a hypermobility spectrum disorder and the physician noted she was close to meeting the criteria for hEDS. (Tr. 416-417). Notably, Claimant is approximately six feet three

inches tall. (Tr. 426). In 2020, notes reflect Claimant received treatment for, *inter alia*, depression and fibromyalgia. (Tr. 310-313). A counseling treatment plan begun on November 25, 2020 assesses Claimant with a primary diagnosis of acute stress disorder, along with generalized anxiety disorder and adjustment disorders mixed. (Tr. 369).

Following the application date, Claimant received treatment for major depressive disorder and insomnia. (Tr. 351-359). Additionally, she received treatment (largely involving counseling for management, along with a referral for an echocardiogram) for mitral valve prolapse, lower extremity edema, and palpitations. (Tr. 384). Treatment notes from September 2021 reflect the mitral valve prolapse was considered chronic with trace regurgitation, but no signs or symptoms of heart failure. (Tr. 387).

In January 2022, Claimant presented at a new clinic to establish care and was assessed with urinary incontinence, chronic left shoulder pain, chronic back pain, somatic dysfunction of thoracic region, Raynaud's disease, connective tissue disorder, generalized anxiety disorder, and palpitation. (Tr. 393-395). She returned in May 2022 for IUD removal, at which time the physical exam was normal, except that she was positive for pelvic pain and vaginal bleeding. (Tr. 400-401). June 2022 treatment notes again reflect ongoing gynecological concerns of abnormal bleeding and irregular menstruation along with Ehlers-Danlos syndrome. (Tr. 433). Claimant underwent a laparoscopic hysterectomy on October 4, 2022. (Tr. 519, 531-533).

A September 2023 x-ray of the left shoulder was normal. (Tr. 635). A musculoskeletal exam was normal, and Claimant deferred physical therapy. She was also referred for an MRI, but the record does not reflect if that was done. (Tr. 602). By October

2023, Claimant had completed physical therapy without improvement, but deferred surgery due to having small children. (Tr. 613).

The record reflects the ALJ ordered several consultative examinations in 2021, 2022, and 2023, but Claimant failed to appear for them. (Tr. 70, 79, 375). State reviewing physician findings initially and upon reconsideration indicate there was insufficient evidence to evaluate Claimant's physical impairments, and her mental impairments were determined to be nonsevere. (Tr. 70-75, 78-82).

At the most recent administrative hearing, Claimant testified that her left shoulder has dislocated several times and has a tear, leaving her with scar tissue, stiffness, and pain. (Tr. 41). Additionally, she testified that EDS causes muscle spasms due to circulation problems, and tears, affecting the tissue in her body as well as her reproductive organs, which is what led to her hysterectomy at such a young age as well as the mitral valve prolapse. (Tr. 42, 45). Claimant further testified that she has balance issues related to EDS. (Tr. 47-48). As a result of the hysterectomy, Claimant reported her bladder issues had improved but not completely resolved. (Tr. 44). Claimant testified she can stand five to ten minutes while shifting between her legs, but then she will get sharp pains in her back and hips. (Tr. 46). She testified she can walk ten to fifteen minutes before her heart starts thumping and she will get lightheaded. (Tr. 46-47). As to sitting, Claimant testified she can sit approximately fifteen minutes before needing to get up and move, due to swelling in her feet and legs, as well as pain in her back and hips, along with muscle cramps. (Tr. 49). In explanation, Claimant reported that the repeated motion of folding laundry causes shoulder pain, and she cannot reach above her head with her left shoulder. Additionally,

she uses a gripping tool to pick things up off the floor because her legs sometimes lock up. (Tr. 49-51). Claimant testified that she spends over half a day lying down or with her feet propped up, and that she uses a massage tool for her shoulder, hips, and legs. (Tr. 51-52). As to her mental impairments, Claimant testified that she gets anxious in public, including anxiety over how she looks given her age, gait, and need to take breaks. (Tr. 53).

In his written opinion at step two, the ALJ found Claimant had only mild impairments in all four areas of function. (Tr. 19-21). At step four, the ALJ thoroughly summarized Claimant's hearing testimony as well as the medical evidence in the record. (Tr. 22-26). In particular, the ALJ noted that while Claimant reported edema, examinations were normal, including no edema. (Tr. 25). Further, the ALJ noted that much of Claimant's testimony related to her gynecological impairments, but that the total hysterectomy appeared to resolve most of those issues. (Tr. 27). The ALJ made particular note of Claimant's failure to appear for the consultative examinations and imaging that were scheduled for her, as well as her continual refusal to participate in physical therapy. (Tr. 27). The ALJ found Claimant's testimony partially supported, but that her physical impairments were not as limited as she reported based on the actual examination findings in the record. He concluded that the treatment notes better reflected the severity of her impairments and conditions. (Tr. 27). The ALJ then explained that the Claimant was limited to less than the full range of light work, specifically noting that he limited her to no reaching overhead based on her testimony. (Tr. 28). The ALJ ultimately concluded Claimant was not disabled because there was work she could perform. (Tr. 29-30).

First, Claimant contends the ALJ erred in assessing her RFC in relation to the medical evidence because she cannot perform the RFC of light work with some limitations for eight hours a day, five days per week. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 96-8p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled his duty.

Claimant contends the ALJ's analysis fails to comply with Soc. Sec. R. 96-8p in providing a narrative statement as to how the evidence supports the conclusions, failing to connect the RFC to the evidence particularly with regard to limitations arising out of her EDS. She contends substantial evidence does not support the ALJ's conclusions because he created the RFC without supportive evidence in the record. Contrary to Claimant's

arguments, the ALJ discussed all the evidence in the record, including the objective findings and his reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289. 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Claimant contends the ALJ failed to consider her complaints regarding hypermobility, fatigue, tiredness, and joint stiffness, but the ALJ did consider the exam findings of her treatment records, which were largely normal with no swelling, and largely full range of motion except for her left shoulder. The evidence does not reflect that Claimant had further limitations than those posed in the RFC. And the ALJ clearly considered EDS and mitral valve prolapse by discussing them at several points at step four and noting how the entirety of the record informed his decision. Furthermore, Claimant has pointed to no medical documentation providing further limitations. And while a nonsevere impairment does not indicate a lack of impairment, Claimant has likewise pointed to no evidence in the record to support any limitations related to her anxiety or depression, other than her own reports. Indeed, Claimant has declined multiple opportunities to develop the record with additional evidence from consultative and imaging referrals. Because she points to no evidence other than her own assertions, the Court declines to find an error here. *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his

ability to perform the standing and walking requirements of light work is not supported by any authority.").

Next, Claimant asserts that the ALJ's RFC is unsupported by substantial evidence because he failed to account for her nonsevere mental impairments. While it is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised[,]" *Henrie v. United States Department of Health & Human Services,* 13 F.3d 359, 360-361 (10th Cir.1993) (citing *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992)), "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Id.* at 361 [citations omitted].

Finally, Claimant contends the ALJ failed to sustain his burden at step five because Claimant's testimony provided evidence for further limitations related to left arm and hand usage, including driving and restrictions based on issues related to muscle spasms, stillness, and pain, but he only found a limitation of overhead reaching. The Government correctly points out that this argument is a further attempt at challenging the RFC assessment, which the Court has upheld, as discussed above. All three jobs identified list reaching as performed 1/3 to 2/3 of the time. DICOT §§ 209.587-034 (Merchandise Marker), 207.685-014 (Photocopy Machine Operator), 699.685-026 (screwdriver operator). However, the Vocational Expert (VE) testified that Claimant could perform these jobs with the restriction from reaching overhead with the left upper extremity, based on her experience. (Tr. 55-56). Claimant contends there is a conflict between the VE's testimony and Claimant's

assigned RFC because the VE provided no information on her experience related to this limitation and the identified jobs. But the VE specifically based her testimony on her own professional experience when it came to overhead reaching limitations because, as the ALJ noted, the Dictionary of Occupational Titles does not account for differences between overhead reaching and reaching in all directions. *Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007) ("The VE was aware of Ms. Segovia's limitations on overhead reaching[.] In these circumstances, the VE's testimony . . . clarifies how [] broad characterizations apply to this specific case.").

Accordingly, the Court finds the ALJ identified jobs Claimant could perform consistent with the assigned RFC. The ALJ clearly considered all of Claimant's impairments and she does not point to any other evidence to support the limitations she claims. Accordingly, the ALJ was not required to include additional limitations in her RFC assessment, or in her hypothetical question posed to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected [Claimant's] challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in h[er] RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."); *see also Adams v. Colvin*, 553 Fed. Appx. 811, 815 (10th Cir. 2014) ("An ALJ does not need to account for a limitation belied by the record when setting a claimant's RFC.") (citing *Qualls*, 206 F.3d at 1372).

The ALJ noted the medical record available in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. This was "well within

the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 15th day of January, 2026.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**